1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MERYL POMPONIO,                          No.  2:19-cv-1006 TLN DB PS

12                   Plaintiff,

13          v.                                FINDINGS AND RECOMMENDATIONS

14   CHARAN BUDWAL, et al.,

15                   Defendants.

16

17          Pending before the court is plaintiff's motion for default judgement against defendant

18   Charan Budwal.  (ECF No. 11.)  Having considered all written materials submitted with respect

19   to the motion, and after hearing oral argument, the undersigned recommends that plaintiff's

20   motion be granted as explained below.

21                                   **BACKGROUND**

22          Plaintiff Meryl Pomponio initiated this action through counsel on May 31, 2019, by filing

23   a complaint and paying the required filing fee.  (ECF No. 1.)  The complaint alleges that plaintiff

24   "was disabled by her extreme medical condition" Paraneoplastic Syndrome which left plaintiff

25   "unable to walk and . . . confined to using a mobility device to complete her day to day

26   activities."  (Compl. (ECF No. 1) at 2.[1])  Defendant Charan Budwal operated a business known as

27   _____

28   [1] Page number citations such as this are to the page number reflected on the court's CM/ECF
     system and not to the page numbers assigned by the parties.

                                          1

"Quick Trip Market Liquor," located at 6945 Stockton Boulevard, in Sacramento, California on the date of the events at issue.[2]  (Id. at 3.)  "In 2018," plaintiff "encountered barriers" at the business.  (Id. at 4.)  Specifically, the business's accessible parking stall and access isle had improper slopes making it difficult for plaintiff to use a wheeled mobility device.  (Id. at 4-5.)  Also, the entrance door was difficult to open while seated and the sales counter "was too high[.]"  (Id. at 5.)  Plaintiff wishes "to patronize the business in the future," but is deterred by these barriers.  (Id.)

Pursuant to these allegations, the complaint alleges the defendant violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., ("ADA"), the Unruh Civil Rights Act, California Civil Code § 51, ("Unruh Act"), and California Civil Code § 54.  (Id. at 5-9.)  On November 26, 2019, plaintiff filed proof of service on the defendant.  (ECF No. 5.)  That same day plaintiff filed a request for entry of defendant's default.  (ECF No. 7.)  The Clerk entered defendant's default on November 27, 2019.  (ECF No. 8.)

On December 3, 2019, plaintiff filed the pending motion for default judgment.  (ECF No. 11.)  Plaintiff's motion seeks injunctive relief, statutory damages of $4,000, and attorneys' fees and costs in the amount of $4,433.25.  (ECF No. 11-1 at 19-21; ECF No. 11-2 at 2.)  The matter came before the undersigned on January 31, 2020, pursuant to Local Rule 302(c)(19), for hearing of plaintiff's motion for default judgment.  (ECF No. 15.)  Attorney Daniel Malakauskas appeared telephonically on behalf of the plaintiff.  Defendant Charan Budwal appeared in person on his own behalf.  The undersigned continued the hearing to March 13, 2020, to allow the parties to meet and confer and to allow defendant an opportunity to file any appropriate pleading.  The hearing was again continued to May 15, 2020, in light of public health and safety concerns.  (ECF No. 17.)

On April 10, 2020, plaintiff filed a supplemental declaration.  (ECF No. 18.)  Therein, plaintiff stated that the parties spoke telephonically on February 4, 2020, discussed settlement, but "no resolution or settlement was reached[.]"  (Id. at 2.)  In light of defendant's failure to file any

---

[2] Also named as a defendant was JS Atwal, Inc.  (Compl. (ECF No. 1) at 3.)  Plaintiff, however, voluntarily dismissed defendant JS Atwal, Inc., on December 2, 2019.  (ECF No. 9.)

1    responsive pleading, on April 23, 2020, the undersigned took plaintiff's motion under submission.

2    (ECF No. 19.)

3                                      **LEGAL STANDARD**

4            Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default

5    judgment.  Upon entry of default, the complaint's factual allegations regarding liability are taken

6    as true, while allegations regarding the amount of damages must be proven.  Dundee Cement Co.

7    v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United

8    States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also

9    DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826

10   F.2d 915, 917-18 (9th Cir. 1987).

11           Where damages are liquidated, i.e., capable of ascertainment from definite figures

12   contained in documentary evidence or in detailed affidavits, judgment by default may be entered

13   without a damages hearing.  Dundee, 722 F.2d at 1323.  Unliquidated and punitive damages,

14   however, require "proving up" at an evidentiary hearing or through other means.  Dundee, 722

15   F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

16           Granting or denying default judgment is within the court's sound discretion.  Draper v.

17   Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.

18   1980).  The court is free to consider a variety of factors in exercising its discretion.  Eitel v.

19   McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Among the factors that may be considered by

20   the court are

21                      (1) the possibility of prejudice to the plaintiff, (2) the merits of
                        plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
22                      the sum of money at stake in the action; (5) the possibility of a dispute
                        concerning material facts; (6) whether the default was due to
23                      excusable neglect, and (7) the strong policy underlying the Federal
                        Rules of Civil Procedure favoring decisions on the merits.
24

25   Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

26   ////

27   ////

28   ////

                                              3

**ANALYSIS**

**A.     Appropriateness of the Entry of Default Judgment under the <u>Eitel</u> Factors**

Plaintiff's motion for default judgement seeks judgement on the complaint's claims that defendant violated Title III of the Americans with Disabilities Act, and the California Unruh Civil Rights Act.  (Pl.'s MDJ (ECF No. 11-1) at 19-21.) The factual allegations of plaintiff's complaint are taken as true pursuant to the entry of default against the defendants.

**1.     Factor One: Possibility of Prejudice to Plaintiff**

The first <u>Eitel</u> factor considers whether plaintiff would suffer prejudice if default judgment is not entered.  When a defendant has failed to appear and defend the claims, a plaintiff will be without recourse and suffer prejudice unless default judgment is entered.  <u>Vogel v. Rite Aid Corp.</u>, 992 F.Supp.2d 998, 1007 (C.D. Cal. 2014) (granting a default judgement for a disabled plaintiff suing under the ADA and Unruh Act, relying upon this rationale).  Here, the defendant is aware of this action, having appeared before the court, but refused to defend against plaintiff's claims of discrimination under the ADA and the Unruh Act.  Absent entry of default judgement, plaintiff would likely be without recourse against the defendant.  Because plaintiff will suffer prejudice if left without recourse, this factor favors an entry of default judgment.

**2.     Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The second and third factors are (1) the merits of plaintiff's substantive claim, and (2) the sufficiency of the complaint.  <u>Eitel</u>, 782 F.2d at 1471-72.  Thus, the second and third <u>Eitel</u> factors require plaintiff to state a claim on which plaintiff can recover.  <u>PepsiCo, Inc. v. California Security Cans</u>, 238 F.Supp.2d, 1172, 1175 (2002); <u>see</u> <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978).  Given the close relationship between the two inquiries, factors two and three are considered together.  As noted above, plaintiff seeks default judgment on the complaint's claims of discrimination in violation of Title III of the Americans with Disabilities Act and discrimination in violation of the Unruh Civil Rights Act.

////

////

4

1          **(1)      Title III of the ADA**

2                    **(a)      Applicable Legal Standards under the ADA**

3          Title III of the ADA prohibits discrimination against an individual "on the basis of

4  disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

5  or accommodations of any place of public accommodation . . . ." Roberts v. Royal Atlantic

6  Corp., 542 F.3d 363, 368 (2nd Cir. 2008); U.S.C. § 12182(a).  Generally, the concept of

7  "discrimination" under the ADA not only includes obviously exclusionary conduct — such as a

8  sign stating that persons with disabilities are unwelcome, but also extends to more subtle forms of

9  discrimination — such as difficult-to-navigate restrooms and hard-to-open doors—that interfere

10  with disabled individuals' "full and equal enjoyment" of places of public accommodation.

11  Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011); PGA Tour, Inc. v.

12  Martin, 532 U.S. 661, 674-75 (2001).  With respect to existing facilities, discrimination includes

13  "a failure to remove architectural barriers … where such removal is readily achievable."  42

14  U.S.C. § 12182(b)(2)(A).

15          To determine if a barrier exists, the ADAAG[3] establishes the technical standards.  If a

16  barrier violates these standards relating to a plaintiff's disability, it will impair the plaintiff's full

17  and equal access, which constitutes "discrimination" under the ADA.  Chapman, 631 F.3d at 947;

18  Doran v. 7–Eleven, Inc., 524 F.3d 1034, 1034 (9th Cir. 2008).  Removal is readily achievable

19  where it is "easily accomplishable and able to be carried out without much difficulty or expense."

20  42 U.S.C. § 1218(9).

21          To prevail on a Title III ADA claim, plaintiff must establish that (1) plaintiff is disabled

22  within the meaning of the ADA; (2) that defendant owns, leases, or operates a place of public

23  accommodation; and (3) that defendant discriminated against the plaintiff within the meaning of

24  the ADA.  Chapman, 631 F.3d at 950.  For an ADA plaintiff to establish Article III standing to

25  ////

26

27  [3] The ADA Accessibility Guidelines (ADAAG) are promulgated by the Attorney General to
"carry out the provisions" of the ADA, 42 U.S.C. § 12186(b).  These guidelines "lay out the
technical structural requirements of places of public accommodation."  Fortyune v. Am. Multi–

28  Cinema, Inc., 364 F.3d 1075, 1080-81 (9th Cir. 2004).

1    pursue injunctive relief, plaintiff must demonstrate the threat of a future repeated injury is real

2    and immediate.  Id. at 946.

3          To demonstrate sufficient likelihood of future harm, a plaintiff can establish that plaintiff

4    intends to return to a noncompliant place of public accommodation where plaintiff is "likely to

5    reencounter a discriminatory architectural barrier."  Id. at 950.  Alternatively, a plaintiff

6    can show that the "discriminatory architectural barriers deter him from returning to a

7    noncompliant accommodation," but that plaintiff would return if the barriers were removed.  Id.

8                     **(b)**     **Analysis**

9          In the instant case, plaintiff has established standing for injunctive relief.  In this regard,

10   the complaint alleges that plaintiff "wish[es] to patronize this business in future[.]"  (Compl.

11   (ECF No. 1) at 5.)  Plaintiff has also provided a declaration in support of the motion for default

12   judgment.  Therein, plaintiff explains that plaintiff visited the business on "October 2, 2018," and

13   has provided as an exhibit a copy of a receipt from that date.  (Pomponio Decl. (ECF No. 11-3) at

14   2; Pl.'s MDJ, Ex. B (ECF No. 11-7) at 2.)  Plaintiff declares that she "would like to visit 'Quick

15   Trip Market Liquor' again, but [is] dissuaded from doing so due to the lack of accessible

16   facilities" but plaintiff "will visit 'Quick Trip Market Liquor' again" once the barriers are

17   removed.  (Pomponio Decl. (ECF No. 11-3) at 2-3.)  The undersigned finds that plaintiff has

18   standing because plaintiff has suffered an injury-in-fact and has demonstrated a likelihood of

19   future injury sufficient to support injunctive relief.  Chapman, 631 F.3d at 950.

20         As to the merits of the ADA claim, there is little dispute that the first two requirements

21   have been met.  Plaintiff alleges in the complaint that plaintiff is "disabled" and "unable to

22   walk[.]"  (Compl. (ECF No. 1) at 2.)  Plaintiff's declaration explains that plaintiff is "unable to

23   walk and must use a wheeled mobility device" due to Paraneoplastic Syndrome.  (Pomponio

24   Decl. (ECF No. 11-3) at 2.)  There can be little doubt that plaintiff is "disabled" within the

25   meaning of the ADA.  See 42 U.S.C. § 12102 (defining "disability" as "a physical or mental

26   impairment that substantially limits one or more major life activities of such individual.").

27         In addition, the complaint alleges that defendant and the store at issue "hold themselves

28   out to the public" as a business establishment.  (Compl. (ECF No. 1) at 3.)  A service

                                              6

1  establishment is expressly identified as a place of public accommodation and subject to Title III

2  of the ADA.  See 42 U.S.C. § 12181 (7)(F).

3      With respect to the third element, whether defendant discriminated against plaintiff, the

4  factual allegations of the complaint establish that defendant's parking stall and access isle "had

5  improper slopes," that "the entrance door was heavy and difficult to open," and that the interior

6  sales counter "was too high[.]"  (Compl. (ECF No. 1) at 5.)  In support of these allegations,

7  plaintiff has offered the declaration of Jason A. Vaughan, a Certified Access Specialist.

8      Vaughn conducted a property review of defendant's parking lot and interior on May 23,

9  2019.  (Vaughn Decl. (ECF No. 11-5) at 2.)  In addition to other violations, Vaughn found that

10  defendant's parking spaces and access isles had a slope exceeding two percent and that the

11  entrance door required more than five pounds of pressure to open.  (Id. at 3.)  Such conditions

12  constitute barriers and, thus, discrimination.[4]  See Wilson v. Norbreck, LLC, No.

13  CIVS040690DLFJFM, 2005 WL 3439714, at *5 (E.D. Cal. Dec. 14, 2005) ("ADAAG 4.13.11

14  and CBC § 1133B.2.5 require doors to open with the application of not more than five pounds of

15  force"); Hubbard v. Twin Oaks Health and Rehabilitation Center, 408 F.Supp.2d 923, 931 (E.D.

16  Cal. 2004) ("Section 4.6.3 of the ADAAG requires that accessible parking spaces and access

17  aisles have a maximum slope of 2% in any direction.").

18      Finally, the complaint alleges that the defendant owned, operated, and had "substantial

19  control over the real property at issue," that the defendant "knew that such barriers existed," "had

20  the financial resources to remove such barriers," and that "such modifications were readily

21  achievable[.]"  (Compl. (ECF No. 1) at 3, 5.)  Therefore, removal of these barriers is "readily

22  achievable" by the defendant, and defendant's failure to do so constitutes "discrimination" under

23  the ADA.  42 U.S.C. § 12182(b)(2)(A).

24      Accordingly, the elements of the ADA claim are satisfied, and plaintiff has met the burden

25  to state a prima facie Title III discrimination claim.  The second and third Eitel factors thus favor

26  the entry of default judgment.  See Lozano v. C.A. Martinez Family Ltd. Partnership, 129

27

28  [4] Barriers are determined by reference to the ADA Accessibility Guidelines (ADAAG).
Chapman, 631 F.3d 939, 945.  The ADAAG are listed in 36 CFR Appendix D to Part 1191.

1  F.Supp.3d 967, 972-73 (S.D. Cal. 2015); <u>Vogel v. Rite Aid Corp.</u>, 992 F.Supp.2d 998, 1009-10

2  (C.D. Cal. 2014).

3              **(2)      California's Unruh Civil Rights Act**

4              The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are

5  free and equal, and no matter what their sex, race, color, religion, ancestry, national origin,

6  disability, medical condition, genetic information, marital status, or sexual orientation are entitled

7  to the full and equal accommodations, advantages, facilities, privileges, or services in all business

8  establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  As expressly provided by

9  statute, a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal.

10 Civ. Code § 51 (f); <u>see also</u> <u>Munson v. Del Taco, Inc.</u>, 46 Cal. 4th 661, 664-65 (Cal. 2009).  Here,

11 because plaintiff's complaint alleges a prima facie claim under the ADA, plaintiff has also alleged

12 facts supporting a claim under the Unruh Civil Rights Act.

13         **3.      Factor Four: The Sum of Money at Stake in the Action**

14             Under the fourth factor cited in <u>Eitel</u>, "the court must consider the amount of money at

15 stake in relation to the seriousness of Defendant's conduct."  <u>Eitel</u>, 782 F.2d at 1471-72; <u>see also</u>

16 <u>Philip Morris USA, Inc v. Castworld Prods., Inc.</u>, 219 F.R.D. 494, 500.  (C.D. Cal. 2003).  In this

17 case, plaintiff seeks injunctive relief; statutory damages of $4,000 under the Unruh Civil Rights

18 Act; and attorney's fees and costs in the amount of $4,433.25, for a total award of $8,433.25.

19 (Pl.'s MDJ (ECF No. 11-2) at 2.)  Although the undersigned more closely scrutinizes the

20 requested statutory damages, attorney's fees and costs below, the undersigned does not find the

21 overall sum of money at stake to be so large or excessive as to militate against the entry of default

22 judgment.

23         **4.      Factor Five: The Possibility of a Dispute Concerning Material Facts**

24             This <u>Eitel</u> factor considers the possibility that material facts are disputed.  "Upon entry of

25 default, all well-pleaded facts in the complaint are taken as true, except those relating to

26 damages."  <u>PepsiCo, Inc.</u>, 238 F.Supp.2d at 1177.  Here, there appears to be no material facts in

27 dispute.  This factor weighs in favor of a default judgment.

28 *////*

8

1      **5.**      **Factor Six: Whether the Default Was Due to Excusable Neglect**

2      This <u>Eitel</u> factor considers the possibility that the defendant's default was the result of

3 excusable neglect. Defendant is indisputably aware of this action, having not only been properly

4 served with plaintiff's complaint and the instant motion for default judgment but personally

5 appeared before the undersigned on January 31, 2020. (ECF No. 15.) Defendant, however, has

6 taken no action to respond to plaintiff's complaint or motion for default judgment. Accordingly,

7 the record suggests that the defendant has chosen not to defend this action, and that the default

8 did not result from excusable neglect. Accordingly, this <u>Eitel</u> factor favors the entry of default

9 judgment.

10      **6.**      **Factor Seven: The Strong Policy Underlying the Federal Rules of Civil**

11            **Procedure Favoring Decisions on the Merits**

12      The final <u>Eitel</u> factor examines whether the strong policy favoring deciding cases on the

13 merits prevents a court from entering default judgment. <u>Eitel</u>, 782 F.2d at 1472. Generally,

14 default judgments are disfavored, and a case should be decided on the merits whenever possible.

15 <u>See</u> <u>Pena v. Seguros La Comercial, S.A.</u>, 770 F.2d 811, 814 (9th Cir. 1985). However, where a

16 defendant's failure to appear "makes a decision on the merits impracticable, if not impossible,"

17 entry of default judgment is warranted. <u>PepsiCo, Inc.</u>, 238 F.Supp.2d at 1177; <u>see</u> <u>also</u> <u>Craigslist,</u>

18 <u>Inc. v. Naturemarket, Inc.</u>, 694 F.Supp.2d 1039, 1061 (N.D. Cal. 2010). Because the defendant

19 has failed to respond in this matter, a decision on the merits is impossible. Therefore, the seventh

20 <u>Eitel</u> factor does not preclude the entry of default judgment.

21      **7.**      **Summary of <u>Eitel</u> Factors**

22      In sum, upon consideration of all the <u>Eitel</u> factors the undersigned finds that plaintiff is

23 entitled to a default judgment against the defendant and recommends that such a default judgment

24 be entered. The undersigned therefore turns to plaintiff's requested relief.

25 **B.**      **Terms of the Judgment to Be Entered**

26      **1.**      **Injunctive Relief**

27      After determining that a party is entitled to entry of default judgment, the court must

28 determine the terms of the judgment to be entered. <u>See</u> <u>Landstar Ranger, Inc. v. Path Enterprises,</u>

1  Inc., 725 F.Supp.2d 916, 920 (C.D. Cal. 2010.).  Plaintiff's motion for default judgment seeks

2  injunctive relief.  (Pl.'s MDJ (ECF No. 11-1) at 19.)  Injunctive relief may be granted "when

3  architectural barriers at defendant's establishment violate the ADA . . . ."  Vogel, 992 F.Supp.2d

4  at 1015.

5         Having found that plaintiff has established that the defendant violated the ADA, the

6  undersigned recommends that plaintiff's request for injunctive relief be granted, and defendant be

7  ordered to remove the barriers at the property identified in plaintiff's complaint, to the extent the

8  defendant has the legal right to do so, so that the facility is readily accessible to and usable by

9  individuals with disabilities.  See Vogel, 992 F.Supp.2d at 1015.

10        **2.     Statutory Damages**

11        The Unruh Act provides that a plaintiff subjected to discrimination is entitled to recover

12 $4,000 for each occasion on which the plaintiff was denied equal access.  Cal. Civ. Code § 52(a).

13 To recover statutory damages, a plaintiff need only show that plaintiff was denied full and equal

14 access, not that plaintiff was wholly excluded from enjoying defendant's services.  Vogel, 992

15 F.Supp.2d at 1015; Hubbard v. Twin Oaks Health and Rehabilitation Center, 408 F.Supp.2d 923,

16 932 (E.D. Cal. 2004).  "A plaintiff is denied full and equal access only if the plaintiff personally

17 encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a

18 place of public accommodation on a particular occasion."  Cal. Civ. Code § 55.56(b).

19        Here, plaintiff seeks $4,000 in statutory damages.  (Pl.'s MDJ (ECF No. 11-1) at 18.)  As

20 noted above, in support of the motion for default judgment plaintiff has submitted a declaration

21 stating that on "October 2nd, 2018," plaintiff "personally went to 'Quick Trip Market Liquor'"

22 and encountered the barriers at issue.  (Pomponio Decl. (ECF No. 11-3) at 2.)  This statement is

23 sufficient to support the award damages for the single violation sought by plaintiff.  Accordingly,

24 the undersigned recommends that plaintiff be awarded $4,000 in statutory damages.

25 ////

26 ////

27 ////

28 ////

**3.** **Attorney's Fees and Costs**

Plaintiff's motion for default judgment seeks an award of $4,433.25 in attorney's fees and costs.[5]  (Pl.'s MDJ (ECF No. 11-1) at 10.)  Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs in the court's discretion.

Local Rule 293 sets forth certain requirements for the consideration of attorneys' fees.  In this regard, a party seeking an award of attorneys' fees must provide information from which the court can determine:

> (1) the time and labor required of the attorney(s);
>
> (2) the novelty and difficulty of the questions presented;
>
> (3) the skill required to perform the legal service properly;
>
> (4) the preclusion of other employment by the attorney(s) because of the acceptance of the action;
>
> (5) the customary fee charged in matters of the type involved;
>
> (6) whether the fee contracted between the attorney and the client is fixed or contingent;
>
> (7) any time limitations imposed by the client or the circumstances;
>
> (8) the amount of money, or the value of the rights involved, and the results obtained;
>
> (9) the experience, reputation, and ability of the attorney(s);
>
> (10) the "undesirability" of the action;
>
> (11) the nature and length of the professional relationship between the attorney and the client;
>
> (12) awards in similar actions; and
>
> (13) such other matters as the Court may deem appropriate under the circumstances.

Local Rule 293(b) and (c).

---

[5] Although plaintiff's motion fails to articulate clearly this amount or an itemization of the attorney's fees and cost sought, the undersigned was able to determine this number from the various exhibits submitted by plaintiff's counsel in support of the motion for default judgment.

11

1    Similarly, with respect to costs Local Rule 292 provides:

2    Within fourteen (14) days after entry of judgment or order under
     which costs may be claimed, the prevailing party may serve on all
3    other parties and file a bill of costs conforming to 28 U.S.C. § 1924.
     The cost bill shall itemize the costs claimed and shall be supported
4    by a memorandum of costs and an affidavit of counsel that the costs
     claimed are allowable by law, are correctly stated, and were
5    necessarily incurred.

6    Local Rule 292(a).

7         Here, although plaintiff's motion acknowledges Local Rule 293 and is supported by a

8    declaration from plaintiff's counsel, plaintiff's submission fails to comply with the provisions of

9    the Local Rules or provide the information necessary to evaluate plaintiff's request.  In this

10   regard, plaintiff's motion only contains a vague and acknowledgement of Local Rule 293,

11   without providing all the information necessary.  (Pl.'s MDJ (ECF No. 11-1) at 20.)

12        For example, there is no discussion of the reasonableness of the hours expended, the rate

13   requested, or discussion of any awards in similar actions either involving plaintiff's counsel or

14   other similar actions in this district.  See generally Roberts v. City of Honolulu, 938 F.3d 1020,

15   1024 (9th Cir. 2019) ("It is the responsibility of the attorney seeking fees to submit evidence to

16   support the requested hourly rate."); Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011)

17   (reasonable hourly rates calculated according to prevailing market rates in the relevant legal

18   community).  Likewise, plaintiff seeks an award of $1,706.25 for costs spent on the Certified

19   Access Specialist without any discussion of whether such an award is allowable by law,

20   reasonable, or been awarded in similar cases.  (Vaughn Decl. (ECF No. 11-5) at 4.)

21        Accordingly, the undersigned recommends that plaintiff's request for attorney's fees and

22   costs be denied without prejudice to renewal.  See United States for use and benefit of Rexel,

23   Inc. v. Hubzone Corp., No. 2:16-cv-0408 JAM EFB, 2019 WL 1150028, at *5 (E.D. Cal. Mar.

24   13, 2019) ("ACIC has not submitted an affidavit addressing the criteria listed in Local Rule 293.

25   Accordingly, its requests for attorney's fees shall be addressed in an appropriate motion filed in

26   conformance with Local Rule 293."); Vang v. Lopey, No. 2:16-cv-2172 JAM CMK, 2017 WL

27   6055771, at *1 (E.D. Cal. Dec. 7, 2017) ("The Court also denied the County's request for

28

attorney's fees twice, most recently based on the County's noncompliance with Local Rule
293(b)."); <u>Beats Electronics, LLC v. Deng</u>, No. 2:14-cv-1077 JAM AC (TEMP) 2016 WL
335833, at *7 (E.D. Cal. Jan. 28, 2016) (recommending denial of request for fees and costs for
failure to comply with Local Rules); <u>Johnson v. Wells Fargo Bank N.A.</u>, No. 2:10-cv-2839 GEB
CKD, 2013 WL 4854790, at *1 (E.D. Cal. Sept. 11, 2013) ("Failure to comply with the local rule
governing the filing of motions for attorney's fees is a reason for denial of the motion.").

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's December 3, 2019 motion for default judgment (ECF No. 11) be granted;

2. Judgment be entered against defendant Charan Budwal;

3. Defendant be ordered to pay $4,000 in statutory damages;

4. Defendant be ordered to correct the violations at the property identified in plaintiff's
complaint, to the extent that defendant has the legal right to do so, so that the facility is readily
accessible to and usable by individuals with disabilities;

5. Plaintiff's request for attorney's fees and costs be denied without prejudice to renewal;
and

6. This case be closed.

These findings and recommendations will be submitted to the United States District Judge
assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within thirty (30) days
after these findings and recommendations are filed, any party may file written objections with the
court.  A document containing objections should be titled "Objections to Magistrate Judge's
Findings and Recommendations."  Any reply to the objections shall be served and filed within
fourteen (14) days after service of the objections.

////
////
////
////

13

The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 26, 2020

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.civil\pomponio1006.mdj.f&rs